UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CASSIE LEA BAKER and BAILEY EUGENE BAKER, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:09-CV-0787-B |
| BNSF RAILWAY COMPANY, et al, | § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants BNSF Railway Company, National Railroad Passenger Corporation, and Velida Morgan's Motion for Summary Judgment (doc. 29). For the reasons stated below, the Court finds Defendants' Motion for Summary Judgment should be and hereby is **GRANTED in part** and **DENIED in part** as follows.

## I.

## BACKGROUND[1]

This action arises out of a collision between a car driven by a fifteen year-old and a train, operated by the Defendants, in Johnson County, Texas on Sunday, May 11, 2008. (Defs.' Mot. Summ. J. 2). The accident occurred where the Cleburne Whitney Road intersects a set of railroad tracks owned and maintained by Defendant BNSF Railway Company ("BNSF"). (*Id.*). The train, operated by Defendant National Railroad Passenger Corporation ("Amtrak") and specifically

---

[1] The Court takes its factual account from those uncontested factual allegations contained in the parties' papers and pleadings. Any contested fact is identified as the allegation of a particular party.

Defendant Velida Morgan ("Engineer Morgan"), entered the Cleburne Whitney Road highway-rail grade crossing (the "Crossing") during its northbound trip from San Antonio to Chicago. (*Id.*). The car was driven by K.B.B., the fifteen-year-old daughter of Plaintiffs Cassie Lea Baker and Bailey Eugene Baker. (*Id.* at 1). K.B.B. possessed a Texas hardship license, which restricted her driving to Monday through Friday, 7:15 a.m. to 3:45 p.m. (Defs.' Mot. Summ. J. 2; Defs.' App. 12.10).

The facts surrounding the accident are not entirely settled. The parties agree that the train driven by Engineer Morgan hit the rear of K.B.B.'s vehicle and that this collision resulted in the death of K.B.B. (Defs.' Mot. Summ. J. 3). The parties further concur that the train was traveling at 75 miles per hour (which is below the federally mandated speed limit) (*Id.*), that Engineer Morgan had a near-miss with a Chrysler PT Cruiser at the Crossing immediately before the accident (Defs.' App. 7.24-.27), that K.B.B. drove through the Crossing on her own or as a passenger on a daily basis (Defs.' App. 11.4), and that Plaintiff Cassie Lea Baker was aware K.B.B. was driving outside of her hardship license restrictions on the day of the accident. (Defs.' Mot. Summ. J. 2).

The parties' respective versions of events diverge as to (1) the distance between Engineer Morgan and K.B.B. when Engineer Morgan first saw K.B.B., (2) whether the gates at the Crossing were malfunctioning on the day of the accident, and (3) the exact nature of Defendant BNSF's attempts to address four false activations that occurred in the month leading up to the collision. Defendants argue that Engineer Morgan first saw K.B.B. in the crossing when she was 1,300 feet away (Defs.' Mot. Summ J. 20), that the gate was functioning properly at the time K.B.B.'s entered the Crossing (Defs.' Reply 4), and that Defendant BNSF's employees promptly responded to and either inspected or repaired all four prior false activations (*Id.*). Plaintiffs contend that Engineer Morgan saw K.B.B. when she was 2,173 feet away (Pls.' App. 130), that eye witnesses said the gates

had been malfunctioning the day of the accident (Pls.' App. 19), and that Defendant BNSF failed to determine the cause of the prior false activations or repair the problem, as evidenced by the continued false activations (Pls.' Resp. 11-12).

On April 3, 2009, Cassie Lea Baker and Bailey Eugene Baker, acting both individually and as personal representatives of K.B.B., filed suit against Defendants BNSF, Amtrak, and Engineer Morgan in Texas state court, alleging causes of action of negligence, gross negligence, and wrongful death. (Pls.' Original Pet. ¶¶ 19-34; Pls.' First Am. Pet. ¶¶ 19-34). Though separate causes of action, all of Plaintiffs' claims are ultimately predicated on a negligence theory. (*See id.*). Defendants now bring their Motion for Summary Judgment (doc. 29), alleging that Plaintiffs' claims are preempted by federal law, that K.B.B.'s contributory negligence precludes any recovery by Plaintiffs, and that Plaintiffs' claims for exemplary damages based on gross negligence are improper. (*See generally* Defs.' Mot. Summ. J.).

## II.

## LEGAL STANDARD

A.  *Summary Judgment*

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(c) provides summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.* When the movant bears the burden of proving an affirmative defense at trial, "it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006) (citing *Martin v. Alamo Cmty. Coll. Dist.*, 35 F.3d 409, 412 (5th Cir. 2003)).

Once the summary judgment movant has met this burden, the non-movant must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

  B. *Federal Preemption*

Under the Supremacy Clause of the United States Constitution, both Congress and any federal agency acting within the scope of its delegated authority have the ability to pass laws or enact

regulations that preempt state law. *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369 (1986). In the context of litigation, parties may raise federal preemption as an affirmative defense to liability. *Berry v. Lee*, 428 F. Supp. 2d 546, 560 (N.D. Tex. 2006). A party moving for summary judgment on the basis of federal preemption must first prove that federal preemption potentially applies to the facts and circumstances of the suit. *Brown v. Earthbound Sports*, 481 F.3d 901, 913 (6th Cir. 2007) (discussing federal preemption in the context of federal securities regulation, but noting that the "basic principles" of federal preemption for any type of case are "clear"). Second, the moving party must provide sufficient evidence that, when viewed in a light most favorable to the non-movant, demonstrates that there is no genuine issue of material fact that the case "unquestionably qualifies for federal preemption." *Id.* If a fact issue as to the claim's qualification for federal preemption remains, summary judgment is not proper, and the issue must be determined by the fact-finder. *Id.*

The Federal Railroad Safety Act (FSRA), in an attempt to ensure nationwide standards of safety, states that preemption precludes state law negligence claims when a federal regulation "covers" the same subject matter. 49 U.S.C. § 20106(a); *see Gauthier v. Union Pac. R.R. Co.*, 644 F. Supp. 2d 824, 834-35 (E.D. Tex. 2009). A federal regulation "covers" the same subject matter when it "substantially subsume[s] the subject matter of the relevant state law." *Id.* (citing *Van Buren v. Burlington N. Santa Fe Ry. Co.*, 544 F. Supp. 2d 867, 876 (D. Neb. 2006). The party advocating preemption under § 20106(a) bears the burden of demonstrating that a regulation "covers" the same subject matter of a state law claim. *Duluth, Winnipeg, and Pac. Ry. v. City of Orr*, 529 F.3d 794, 797 (8th Cir. 2008).

Congress added § 20106(b) in 2007 to clarify that federal preemption does not apply under certain circumstances. *Gauthier*, 644 F. Supp. 2d at 835. This provision states that a state-law

personal injury, death, or property damage action is not preempted when it alleges that a party either (1) failed to comply with the federal standard of care established by a regulation or order, (2) failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order, or (3) failed to comply with a state law that is not incompatible with federal law nor unreasonably burdensome on interstate commerce. 49 U.S.C. § 20106(b). The burden of proving non-compliance under this "savings clause" rests upon the party resisting preemption. *See City of Orr*, 529 F.3d at 797 (stating that party resisting preemption bears burden of proving non-compliance with a state law that is not incompatible with federal law nor unreasonably burdensome on interstate commerce); *see also Helmrich Transp. Sys., Inc. v. City of Philadelphia*, No. Civ.A.02-2233, 2004 WL 2278534, at *3 n.9 (E.D. Pa. Oct. 8, 2004) (stating that party resisting preemption bears burden of proving that safe harbor or exception to preemption applies).

    C.    *Proportionate Responsibility*[2]

The Proportionate Responsibility Statute provides that a "claimant may not recover damages if his percentage of responsibility is greater than 50 percent." TEX. CIV. PRAC. & REM. CODE § 33.001. Under Texas law, proportionate responsibility is an affirmative defense. *Hudson v. City of Houston*, No. 14-03-00565-CV, 2005 WL 3995160, at *5 (Tex. App.–Houston 2005, no pet.). A

---

[2]Defendants term this affirmative defense "contributory negligence." That term of art of was formerly used in Texas to reflect a doctrine under which any negligence by a plaintiff precluded recovery. *See Kroger Co v. Keng*, 23 S.W.3d 347, 350 (Tex. 2000). However, the Texas legislature adopted a comparative negligence system in 1973. *Id.* Today, what was the doctrine of "Contributory Negligence" is now called "Proportionate Responsibility." *See* TEX. CIV. PRAC. & REM. CODE § 33.001. While "contributory negligence" now simply refers to a plaintiff who is partially responsible for the injury, it says nothing as to the degree of responsibility. *See Kroger*, 23 S.W.3d at 350. For purposes of ease and clarity, the Court will refer to Defendants' argument as one for summary judgment on the basis of proportionate responsibility.

defendant seeking to employ it as a defense "must plead a plaintiff's comparative fault and introduce evidence of that responsibility. *Id.* (citing *Kroger Co. v. Keng*, 23 S.W.3d 347, 351 (Tex. 2000)).

  D. *Gross Negligence and Exemplary Damages*

Under Texas law, exemplary damages are only available when a claimant proves by clear and convincing evidence that the harm suffered is the result of fraud, malice, or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003(a). The purpose of exemplary damages is to punish defendants for their "outrageous, malicious, or otherwise morally culpable conduct" and to deter that defendant and others from engaging in the same conduct in the future. *See Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 40 (Tex. 1998) (stating so in the context of punitive damages, which are a form of exemplary damages). Plaintiffs' claims for exemplary damages are based wholly on the gross negligence claims. *(See* Pls.' Resp. 21). Gross negligence is defined as "an act or omission (1) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11).

**III.**

**ANALYSIS**

Defendants have moved for summary judgment on each of Plaintiffs' claims on several grounds. First and foremost, the Defendants' argue that federal preemption precludes each of Plaintiffs' claims. The Court will address the argument as a threshold matter. Those claims that survive the preemption analysis will be then examined in the context of the Defendants' argument

that the decedent's and Plaintiffs' contributory negligence bars Plaintiffs' recovery on their claims. This requires an analysis of whether any rational jury could find K.B.B. and Plaintiffs less than fifty percent proportionately responsible in her death. Finally, the Court turns to the separate question of the adequacy of plaintiffs' claims of gross negligence, which form the basis of their request for exemplary damages.

A. *Federal Preemption*

In order for Plaintiffs' claims to fall within the ambit of federal preemption, Defendants, as movants for summary judgment on the basis of an affirmative defense, must demonstrate that federal regulations "cover" the same subject matter as each of Plaintiffs' negligence claims. If Defendants satisfy this burden, Plaintiffs must then come forward and demonstrate that a fact issue exists as to whether Defendants complied with these regulations.

Plaintiffs' First Amended Complaint lists fifteen negligent acts committed by Defendant BNSF and fourteen negligent acts by Defendants Amtrak and Morgan. (Pls.' First Am. Pet. ¶¶ 23, 28). In their Motion for Summary Judgment, Defendants confront these claims of negligent conduct by analyzing whether they constitute breaches of the their duties to maintain or inspect, to warn, to slow, and to properly train. (Defs.' Mot. Summ. J. 6). This recasting of Plaintiffs' negligence claims in terms of whether they constitute breaches of Defendants' duties makes sense because the crux of the federal preemption inquiry is whether federal regulations cover the same subject matter and whether Defendants violated those regulations or relevant internal guidelines. Because Plaintiffs do not dispute Defendants' contention that each of Plaintiffs' claims are "covered" by federal regulations, the Court finds that Defendants have satisfied their burden of proving that all of Plaintiffs' claims are "covered" under 49 U.S.C. § 20106(a). Thus, Plaintiffs must raise a fact

question as to whether Defendants complied with applicable federal regulations or internal guidelines under § 20106(b)[3] in order to circumvent Defendants' federal preemption defense. As set forth below, Plaintiffs attempt to do just that by alleging that the Defendants violated their own rules and policies.

Plaintiffs allege multiple violations of federal regulations and internal policies. These alleged violations generally fall into four categories: (1) BNSF's failure to properly address prior false activations; (2) BNSF's failure to properly maintain rail ties and joints at or near the Crossing, (3) Amtrak and Engineer Morgan's failure to brake or slow prior to the accident, and (4) Defendants BNSF and Amtrak's failure to properly train their employees. In order for federal preemption to preclude claims based on these alleged violations, Plaintiffs must raise a fact question as to whether Defendants complied with the applicable regulations and internal guidelines. Each category of alleged violations is addressed separately below.

    i.    <u>BNSF's Failure to Properly Address False Activations</u>

Plaintiffs first allege that Defendant BNSF violated the federal standard of care set by 49 C.F.R. § 234.107 and a 2004 FRA directive (both dealing with false activation procedure and response). (Pls.' Resp. 11-12). Section 234.107 mandates that railroads, upon receipt of a credible report of a false activation at a highway-rail grade crossing, must promptly initiate efforts to notify any arriving train of the false activation, notify law enforcement, and provide alternative means of warning to drivers, either in the form of a flagger, a uniformed law enforcement officer, or by reducing train speeds to below fifteen miles-per-hour through the Crossing. 49 C.F.R. § 234.107.

---

[3] Plaintiffs have not alleged any violation of applicable state law.

The 2004 FRA directive sets a similar standard, mandating that railroads "have specific policies or procedures in place requiring the restoration of highway-rail grade crossing active warning systems to proper operation in a timely manner." Notice of Safety Advisory, 69 Fed. Reg. 48560-02 (Aug. 10, 2004).

Defendants do not dispute that no flagger or uniformed officer was present at the Crossing at the time of the accident, nor that the Amtrak train did not slow down to 15 miles-per-hour. Instead, Defendants' arguments appear to be based wholly on 49 C.F.R. § 234.207. That section provides,

> (a) When any essential component of a highway-rail grade crossing warning system fails to perform its intended function, the cause shall be determined and the faulty component *adjusted, repaired, or replaced* without undue delay.
>
> (b) *Until repair of an essential component is completed*, a railroad shall take appropriate action under . . . § 234.107, False activation, of this part.

49 C.F.R. § 234.207 (emphasis added). Defendants argue that all four prior false activations were promptly responded to and repaired as required.[4] The Court assumes that Defendants rely upon the Signal Ticket Reports generated by BNSF for each of the four false activations. (*See* Defs.' App. 8.24-.40). Also, Defendants have included in their appendix testimony from Foster Peterson and Ricky Carmack, both of whom elaborated on these Ticket Reports, noting that BNSF maintenance workers could find no fault with two of the false activations and repaired some problems on the other two. (Defs.' App. 4, Ex. A-9; 6, Ex. A-2).

---

[4]In fact, in the entirety of Defendants' Motion for Summary Judgment and Reply, they cite to their appendix only four times. (*See* Defs.' Reply 6). This is a patent violation of Local Rule 56.5(c) and has caused a substantial expenditure of the Court's time and resources. Nevertheless, the Court is satisfied that its comprehensive reading of Defendants' Appendix is sufficient to determine the summary judgment issues presently before it.

The Court is unconvinced by Defendants' arguments. Plaintiffs have provided evidence that the gates had a history of false activations in the community, more than even those reported to Defendant BNSF. (Pls.' App. 19). Furthermore, BNSF's own expert testified that the ticket reports relied upon by BNSF were prone to mistake and lacked clarity. (Defs.' App. 8.11, 8.15). The Court simply cannot conclude beyond peradventure that Defendant BNSF complied with the federal standard of care established by these regulations. A fact question exists as to whether BNSF's maintenance procedures met the federal standards of "determining" the cause of the false activations or "repairing" the faulty component, and thus FRSA preemption is inappropriate.

### ii. BNSF's Failure to Properly Maintain Rail Ties and Joints

Plaintiffs also allege several violations of 49 C.F.R. § 213. Section 213.5(a) generally provides that a railroad who knows or has notice that the track does not comply with the standards set forth in § 213 shall either bring the track into compliance or halt operations over that track. Plaintiffs claims of non-compliance include inadequate track drainage (213.103(c)), improper securing of rail joints (213.121(f)), improper track inspections (213.233(b)), and improper use of deteriorated rail ties and joints (BNSF internal policies). Defendants and Defendants' experts argue that several of these alleged violations were not violations at all and that BNSF's internal guidelines as to railroad ties are not based on any particular regulation. (*See* Defs.' Reply 5; Defs.' App. 5, Ex. A-2, A-3). The Court finds neither of these arguments convincing. First, 49 C.F.R. § 213.109 exclusively deals with the condition of cross ties, and thus a fact question remains as to whether BNSF's guidelines were created pursuant to that regulation. A fact issue also remains as to whether Defendants actually violated these regulations and internal guidelines, as demonstrated by the very fact that the parties' experts disagree on whether a violation occurred. (*Compare* Pls.' App. 21, *with* Defs.' App.

5, Ex. A-2, A-3). The Court is satisfied that Plaintiffs have raised a fact question as to these alleged violations of federal standards of care and internal guidelines, and thus preemption is not proper.

### iii. Amtrak and Engineer Morgan's Failure to Brake or Slow

While the fourteen negligent acts listed in Plaintiffs' complaint as committed by Defendants Amtrak and Morgan are largely the same as those alleged against BNSF, Plaintiffs also allege that Defendants Amtrak and Morgan failed to keep a proper lookout, failed to sound the train's whistle, failed to timely apply the breaks, and failed to stop the train to avoid the collision. (Pls.' Resp. 7-8). As an initial matter, the Court notes that Plaintiffs cannot simply incorporate their claims based on Defendant BNSF's failure to properly address prior false activations and to properly maintain rail ties and joints against Defendants Amtrak and Morgan. *See Conmy v. Amtrak*, No. 4:04-CV-105, 2006 WL 3063431, at *2-*4 (W.D. Mich. Oct. 26, 2006) (stating that Defendant Amtrak did not have maintenance responsibility for crossing signal). Plaintiffs have provided no evidence that Defendants Amtrak or Morgan were aware of any prior false activation at the Crossing, as required for 49 CFR § 234.107 to apply. Plaintiffs appear to concede this point as they never mention Defendants Amtrak and Morgan in the context of those violations. (*See* Pls.' Resp. 11-14). In any event, to the extent Plaintiffs are making the argument that Defendants Amtrak and Morgan failed to properly address prior false activations and to properly maintain rail ties and joints at the Crossing, summary judgment is *granted*.

Otherwise, Plaintiffs specifically maintain that Defendants Amtrak and Morgan violated the federal standard of care and Defendant Amtrak's internal guidelines by failing to reduce throttle, failing to brake upon seeing K.B.B. in the crossing, failing to brake upon the near-miss with the PT Cruiser, and actually increasing the train's speed after seeing K.B.B.'s vehicle. (Pls.' Resp. 14-15).

Plaintiffs base these arguments on 49 CFR § 234.107 and the Operating Rules subscribed to by Defendant Amtrak.

With respect to § 234.107, Plaintiffs argue that Defendants failed to slow the train to fifteen miles per hour despite the fact that the Crossing was falsely activating. However, in order for that regulation to apply, a railroad must have "receipt of a credible report of a false activation." 49 C.F.R. § 234.107. Plaintiffs have provided no evidence that Defendants Amtrak and Morgan were aware of any of the prior false activations or any false activation that might have occurred at the time of the accident. Furthermore, at least one court has held that general claims that a train was moving too quickly, absent a violation of a federal regulation or internal guideline, are preempted. *Stone v. CSX Transp., Inc.*, 37 F. Supp. 2d 789, 796 (S.D. W. Va. 1999). Thus, Plaintiffs have not raised a fact question as to a violation of federal regulations, and any claim based on the federal standard of care as to speed, braking, or slowing is otherwise preempted. As to this particular claim against Defendants Amtrak and Morgan, summary judgment is *granted*.

Plaintiffs' also argue that Defendants Amtrak and Morgan violated Amtrak's General Code of Operating Rules, which generally states that "[s]afety is the most important element in performing duties" and that train personnel must maintain a safe course and remain alert and attentive. (Pls.' Resp. 15). Defendants counter that Engineer Morgan complied with 49 C.F.R. § 213.9, which set the maximum allowable speed for the Crossing at 80 miles per hour. (Defs.' Mot. Summ. J. 18). The train was only traveling 75 miles per hour. (*Id.* at 3). Were the only issue whether Defendants complied with § 213.9, preemption would be proper on the internal guidelines claim as well. However, Defendant Amtrak's internal guidelines appear to incorporate the regulations' concerns with speed and go even farther, requiring that train personnel maintain a safe course and remain

alert and attentive. (Pls.' App. 132-33). Plaintiffs have provided evidence that Engineer Morgan failed to slow down after a near miss at crossing immediately before the Cleburne Whitney Road Crossing (*Id.* at 131), likely would have slowed enough to miss K.B.B. if she had applied the brakes at that point (*Id.*), and actually increased speed as she approached the Crossing even though she had already seen K.B.B. enter it. (*Id.* at 126, 203). The Court finds that a fact issue exists as to whether Morgan complied with Amtrak's internal guidelines by maintaining a safe course and remaining alert and attentive. Accordingly, summary judgment based on preemption of Plaintiffs' failure to slow claims, so far as they are based on the violation of Amtrak's internal guidelines, is not proper.

### iv.     Defendants BNSF and Amtrak's Failure to Properly Train Employees

Plaintiffs argue that Defendants BNSF and Amtrak's failure to comply with the federal standard of care or their own internal guidelines demonstrates that they failed to properly train their employees, and thus preemption of those claims is not proper either. (Pls.' Resp. 14-15). Defendants argue that Plaintiffs' claims are preempted under 49 C.F.R. § 240.1, *et seq.*, which deals with the training of rail employees, and cite a number of cases that find preemption of those claims (Defs.' Mot. Summ. J. 20-21). Plaintiffs have offered no evidence of violations of a federal standard of care or Defendants' own internal guidelines to support their claims as required under 49 U.S.C. § 20106 to escape preemption.[5] Accordingly, the Court finds that federal preemption does apply to Plaintiffs'

---

[5] Plaintiffs also base their claims of inadequate training, in part, on BNSF's employees' failure to inspect the passing train from the ground or warn approaching motorists of the train's approach. (Pls.' Resp. 13). The latter claim fails because Plaintiffs offer no evidence of a specific regulation or internal guideline based on a regulation that was violated. The claim that BNSF's employees failed to inspect the train from the ground does cite to an internal guideline (Section 6.29 of the General Code of Operating Rules) but fails to offer evidence that this guideline was created pursuant to any applicable regulation.

claims based on Defendants' failure to properly train their employees, and summary judgment on those claims is *granted*.

> v. Conclusion as to Federal Preemption

Plaintiffs' claims based on Defendant BNSF's failure to properly address prior false activations (i, *supra*) are not preempted and thus summary judgment is *denied* as to those claims due to the existence of fact issues concerning the violation of the federal standard of care established by both agency regulations and an agency order.

Plaintiffs' claims based on Defendant BNSF's failure to properly maintain rail ties and joints (ii, *supra*) are also not preempted and summary judgment is thus *denied* based on the existence of fact issues concerning the violation of the federal standard of care created by agency regulations.

As to Plaintiffs' claims against Defendants Amtrak and Morgan, to the extent they are based on an argument that Defendants Amtrak and Morgan failed to properly address prior false activations and to properly maintain rail ties and joints at the Crossing (iii, *supra*), summary judgment is *granted*.

Plaintiffs have failed to raise a fact question as to their claims against Defendants Amtrak and Morgan for failure to slow (iii, *supra*) based upon the violation of the federal standard of care. Those claims are therefore preempted and summary judgment is *granted*.

Plaintiffs' claims of failure to slow (iii, *supra*), so far as they are based on Defendant Amtrak's internal guidelines, are also not preempted and summary judgment is *denied* because of fact issues concerning the violation of Amtrak's internal guidelines.

Plaintiffs have similarly failed to raise a fact question as to their claims against Defendants BNSF and Amtrak for failure to properly train employees (iv, *supra*). Those claims are therefore preempted and summary judgment is *granted*.

B.    *Proportionate Responsibility*

Because some of Plaintiffs' claims[6] survive Defendants' preemption defense, it is necessary to examine Defendants' alternative basis for summary judgment, the Texas Proportionate Responsibility Statute. Defendants argue that (1) K.B.B. was negligent *per se* in entering the crossing, (2) Plaintiffs were negligent allowing K.B.B. to drive outside of her hardship restrictions, and (3) no reasonable jury could conclude that K.B.B. and Plaintiffs' negligence amounted to less than fifty percent of the reason for her death. (Defs.' Mot. Summ. J. 21-22). Plaintiffs contend that K.B.B. was not negligent *per se* and that K.B.B.'s violation of her hardship restrictions was not a proximate cause of K.B.B.'s death. (Pls.' Resp. 15-20). Because this case is currently at the summary judgment stage of litigation, the Court finds it unnecessary to examine the question of whether K.B.B. was negligent *per se* or whether Plaintiffs' were negligent in allowing her to drive. The simple fact that a claimant was negligent *per se* does not automatically foreclose the possibility of recovery if the claimant's negligence amounts to less than fifty percent. *See, e.g.*, *Biaggi v. Patrizio Restaurant Inc.*, 149 S.W.3d 300, 309-10 (Tex. App.–Dallas 2004, no pet.). The Court finds that there is a fact question whether K.B.B. and Plaintiffs' negligence exceeded fifty percent. While Defendants have pled Plaintiffs' and K.B.B.'s comparative fault, they have not produced sufficient evidence that would

---

[6]As the Court has found that all of Plaintiffs' claims are "covered" under 49 U.S.C. § 20106(a) and as Plaintiffs have failed to raise any other grounds of noncompliance that would create a fact question as to preclude preemption under § 20106(b), except for those claims upon which fact issues were identified above, all other claims of Plaintiffs are preempted.

preclude a reasonable jury from finding that either party's negligence was more than fifty percent responsible for K.B.B.'s death. While K.B.B. might have been a proximate cause of her own death, Texas law provides that there can be more than one proximate cause of an injury. *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001). Defendants will still be afforded the protections of the Proportionate Responsibility Statute at trial if the jury does in fact find that Plaintiffs or K.B.B. are more than fifty percent responsible. Accordingly, summary judgment of Plaintiffs surviving claims on this basis is *denied*.

C. *Gross Negligence and Exemplary Damages*

Defendants finally contend that Plaintiffs have not raised a fact question as to their gross negligence claim, and thus cannot recover exemplary damages. (Defs.' Mot. Summ. J. 23). Plaintiffs point to BNSF's failure to address prior activations and Engineer Morgan's failure to slow as potential bases for a reasonable jury's finding of gross negligence. (Pls.' Resp. 21). Defendants particularly argue that Plaintiffs have failed to present sufficient evidence of either objective awareness or subjective awareness, as necessary to survive summary judgment. (Defs.' Mot. Summ. J. 23). The Court finds that Plaintiffs have raised a fact question as to both, and thus summary judgment is improper.

In terms of objective awareness as to the false activations claim, a reasonable jury could conclude that Defendants' alleged failures to address prior false activations involved an extreme degree of risk, as frequent malfunctions would very likely lead drivers to disregard future crossings. *See Stone v. CSX Transp., Inc.*, 37 F. Supp. 2d 789, 796 (S.D. W. Va. 1999). The fact that Defendant BNSF's employees went out to the Crossing and attempted to fix the false activation problem indicates they were subjectively aware of the problem, yet continued to allow normal operation of

these trains through the Crossing.  With respect to Plaintiffs' failure to brake or slow claim, a reasonable jury could conclude that Engineer Morgan's failure to slow when she saw K.B.B. in the Crossing involved an extreme degree of risk that death could come to the person in the vehicle.  A reasonable jury could also conclude that Engineer Morgan was subjectively aware that K.B.B. might die if she were unable to exit the Crossing prior to the train's arrival, yet continued at a high velocity anyway.  Thus, Plaintiffs have raised a fact question on their gross negligence and exemplary damages claims, and summary judgment is *denied*.

## IV.

## CONCLUSION

The Court **DENIES** Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims based on Defendant BNSF's failure to properly address prior false activations and failure to properly maintain rail ties and joints.  The Court also **DENIES** Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims based on Defendants Amtrak and Morgan's failure to brake or slow, so far as those claims are based upon Defendants' failure to comply with Defendant Amtrak's internal guidelines.  Finally, the Court **DENIES** Defendants' Motion for Summary Judgment with respect to Defendants' arguments that the Proportionate Responsibility Statute precludes liability and that Plaintiffs have not raised a fact question as to gross negligence and exemplary damages.

The Court **GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims based on Defendants Amtrak and Morgan's failure to brake or slow, so far as those claims are based upon Defendants' failure to comply with the federal standard of care.  The Court also

**GRANTS** Defendants' Motion for Summary Judgment with respect to Plaintiffs' claims based on Defendants BNSF and Amtrak's failure to properly train employees.

The Court will consider Defendants' pending motions to strike (docs. 51-54) at the pre-trial conference, which remains scheduled for **Friday, October 22, 2010 at 10 AM**. Trial will commence on Monday, October 24, 2010.

**SO ORDERED.**

DATED October 13, 2010

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE